plus. The effect on invested capital would be the same, however, since the item of $10,000 was eliminated from the asset account but once which, in the opinion of this office, was proper in so far as the determination of invested capital is concerned since the capital stock issued for the stamp account was returned to the corporation and there is no evidence of value.

The taxpayer does not appear to claim a paid-in surplus on account of the value of the McKinley Stamp Business, but contents itself with a claim that invested capital should not be reduced on account of that asset. However, $15,000 par value of the stock originally issued for all of the assets of the Kenny Brothers Company, including the "Stamp Business" account, was retransferred to the corporation and the books balanced in connection with other entries by a credit to surplus which, in effect, offset the "McKinley Stamp Business" account by a surplus account. The taxpayer contends that, inasmuch as the examining revenue agent shows a deficit both at January 31, 1918, and January 31, 1919, in excess of $10,000, the elimination of the "McKinley Business" account from capital stock is erroneous, whether or not that business was actually worth $10,000 when paid in for stock in the corporation.

The contention of the taxpayer is clearly correct. The ruling of the Solicitor ignores the fact that the taxpayer's invested capital is made up entirely of stock issued for property or cash, concededly, so far as property is concerned, of a value in excess of $97,200, to which amount the common stock originally issued was reduced by the $15,000 returned by the Kennys. Had the taxpayer possessed a surplus from which $10,000 could be deducted at the beginning of either of the years ended January 31, 1919, or December 31, 1919, the deduction of the $10,000 item in question would be obviously proper, unless the business had a value of $10,000 when paid in. It is equally clear that since there was no such surplus, but, on the contrary, a deficit in excess of $10,000 on each of the above dates, the deduction of a further sum of $10,000 from the capital stock account was improper. The partnership turned in tangible property for stock in at least the sum, so far as the record shows, of $102,200, and received therefor and for the stamp business stock of a par value of $112,200, thereafter returning $15,000. The taxpayer is clearly entitled to an invested capital for the respective years of $157,700 and $170,700 instead of $147,700 and $160,700, as allowed by the Commissioner.

The tax will be recomputed in accordance with the foregoing and settled as set forth in the decision.

---

## Appeal of J. J. O'CONNOR & CO.            Docket No. 1060.

On the evidence, *held,* that the trade or business operated by the taxpayer was one which had no invested capital, or not more than a nominal capital, under the provisions of section 209 of the Revenue Act of 1917.

Submitted March 17, 1925; decided April 14, 1925.

*S. S. Smith, Esq.,* for the taxpayer.
*E. C. Lake, Esq.,* for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves a deficiency in profits taxes of $2,706.27 for the year 1917, and is based upon the refusal by the Commissioner to assess the taxes under section 209 of the Revenue Act of 1917.

### FINDINGS OF FACT.

The taxpayer is a partnership, organized in September, 1916, and doing business in Pittsburgh, Pa. Approximately $100 was paid in on the organization of the partnership. This was for paying office rent. The business was that of brokers and dealers in tin plate and metals.

The balance sheet on December 31, 1916, was as follows:

Assets:

| | |
|---|---|
| Cash | $846. 67 |
| Petty cash | 12. 25 |
| Accounts receivable | 1, 208. 40 |
| Total | 2, 067. 32 |

Liabilities:

| | |
|---|---|
| Accounts payable | 450. 00 |
| C. H. Brushaber | 96. 48 |
| James L. Perkins | 36. 70 |
| Surplus | 1, 484. 14 |
| Total | 2, 067. 32 |

The balance sheet on December 31, 1917, was as follows:

Assets:

| | |
|---|---|
| Cash | $10, 716. 22 |
| Petty cash | 87. 50 |
| C. H. Brushaber & Co., Inc | 1, 692. 35 |
| Pittsburgh Metals Co | 1, 372. 03 |
| Accounts receivable | 1, 987. 46 |
| Total | 15, 855. 56 |

Liabilities:

| | |
|---|---|
| Accounts payable | 1, 692. 14 |
| Jas. L. Perkins | 9. 57 |
| Surplus | 14, 153. 85 |
| Total | 15, 855. 56 |

The only persons who were engaged in the business were the two partners and one employee who was bookkeeper and stenographer. No capital was put into the business by the partners during 1917, nor was any money borrowed. The December 31, 1917, surplus represented undistributed earnings of that year, except in so far as the December 31, 1916, surplus was carried over. It was not employed in the business. The taxpayer had no storage facilities and carried no stock. It owned no property and there were no bad debts. All business was solicited by the two partners. The method was to make inquiries from prospective buyers as to their demands, obtain quotations from sellers, which were referred to the buyers, and, if satisfactory, orders were placed with the sellers.

The gross business handled by the taxpayer in 1917 was $2,466,747.83. This was divided into three classes, as follows:

| | |
|---|---:|
| Class A | $2, 055, 990. 00 |
| Class B | 218, 529. 21 |
| Class C | 192, 228. 62 |
| | 2, 466, 747. 83 |

Class A consisted of sales where shipments were made direct from the seller to the buyer, who transmitted payment therefor direct to the seller. On this class the taxpayer received commissions from the seller in the amount of $14,949.60.

Class B consisted of sales where shipments were made on bills of lading to the order of the consignor-seller, notify the customer, sent with sight draft, to which bill of lading was attached. The taxpayer released the goods by payment of the draft with funds secured from the purchaser for the purpose and sent bill of lading to customer. Those accounts were all in the Pittsburgh district and the method was adopted as a convenience for the buyer and seller. The taxpayer merely collected the bill, forwarding to the seller the invoice price less its commission. The taxpayer neither borrowed money nor used its own funds for the purpose.

Class C consisted of goods purchased by the taxpayer on orders previously received from buyers and resold, a profit being realized on the sale as distinguished from commission. In no instance were any funds of the taxpayer required in these transactions. In no case was the taxpayer's profit affected by changes in market conditions after a sale had been arranged and prior to payment for the goods, because goods were never ordered except where a sale had been previously arranged.

In its profits-tax return for 1917, the taxpayer reported an inventory at the end of the year in the amount of $2,277.45. This represented a shipment of metal from sellers to buyers which the taxpayer held pending adjustment of certain differences. They were not goods purchased by the taxpayer and it did not, in fact, have the possession of or title to these goods.

DECISION.

The deficiency determined by the Commissioner is disallowed.

---

**Appeal of CHARLES R. GOW CO.**          **Docket No. 1542.**

Upon the evidence produced the taxpayer is not entitled to classification as a personal service corporation.

Submitted March 24, 1925; decided April 15, 1925.

*John F. Malley, Esq.*, and *John N. O'Donohue, Esq.*, for the taxpayer.

*J. A. Adams, Esq.*, for the Commissioner.